UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DR. GERALD FINKEL, as Chairman of
the Joint Board of the Electrical
Industry,                                          **MEMORANDUM AND ORDER**
                                                   11-cv-5662(KAM)(JO)

                    Plaintiff,

     -against-


E.A. TECHNOLOGIES, INC., EDWARD
WILLNER, E.A.
TECHNOLOGIES/PETROCELLI, J.V., a
joint venture, SIEMENS TRANSIT
TECHNOLOGIES, a Consortium of
Siemens Transportation Systems, Inc.
and Transit Technologies, L.L.C.,
TRANSIT TECHNOLOGIES, L.L.C.,
SIEMENS INDUSRTY, INC., SUCCESSOR BY
MERGER TO SIEMENS TRANSPORTATION
SYSTEMS, INC., SIEMENS CORPORATION,
SUCCESSOR BY MERGER TO SIEMENS
COMMUNICATIONS, INC., ALCACEL-LUCENT
USA INC., FEDERAL INSURANCE COMPANY,
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, ONEBEACON INSURANCE COMPANY
f/k/a GENERAL ACCIDENT INSURANCE
COMPANY OF AMERICA, WESTERN SURETY
COMPANY, FIDELITY AND DEPOSIT
COMPANY OF MARYLAND, and BARON &
BARON, ESQS., P.C.,

                    Defendants.
------------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiff Dr. Gerald Finkel, as Chairman of the Joint

Industry Board of the Electrical Industry (the "Joint Board"),

brought this lawsuit to recover from defendants E.A.

Technologies, Inc. ("E.A. Technologies"), Edward Willner,

principal of E.A. Technologies, and several other entities and insurance carriers past due payments due pursuant to collective bargaining agreements to various employee benefit funds of which plaintiff is the fiduciary.  Plaintiff has also sued defendant Baron & Baron, Esqs., P.C. ("Baron & Baron") under a variety of state common law theories for "legal or equitable relief related to the use of proceeds of the sale of real property which Willner had promised to use to pay the amounts sought in this action." Pending before the court is Baron & Baron's motion to dismiss plaintiff's claims against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, plaintiff's claims against Baron & Baron are dismissed in their entirety with prejudice.

## BACKGROUND

The following facts, taken from plaintiff's Third Amended Complaint (ECF No. 134, Third Amended Complaint ("Third Am. Compl."), dated 7/25/14), are assumed to be true for the purpose of deciding the instant motion.  Defendant Baron & Baron is a New York law firm that provided legal services for defendant E.A. Technologies, defendant Willner, and Battery Place Realty, LLC ("Battery Place Realty"), a limited liability corporation owned by Willner.  (Third Am. Compl. ¶¶ 23, 134-37.) Plaintiff is the Chairman of the Joint Board, which is the administrator and fiduciary of employee benefit plans

established and maintained pursuant to collective bargaining agreements between an electrical union and various employers and employer associations in the electrical industry and other related industries. (Third Am. Compl. ¶¶ 4-5.)

E.A. Technologies was required to remit contributions for any employee performing work covered by the relevant collective bargaining agreements, pursuant to those agreements. (Third Am. Compl. ¶¶ 5-6, 28.) Beginning in February 2011, E.A. Technologies failed to make required contributions to several plans administered by the Joint Board. (*Id.* ¶¶ 35-40.) In addition to missing payments, E.A. Technologies underpaid its required contributions for the week ending on January 5, 2011 (*Id.* ¶¶ 41-43) and the period from April 1, 2009 to March 31, 2010, as revealed by an audit by the Joint Board (*Id.* ¶¶ 44-47).[1] E.A. Technologies submitted several checks to the Joint Board to remit required contributions, each of which were returned to the Joint Board by its bank for insufficient funds. (*Id.* ¶¶ 48-68.) None of these checks were replaced, nor were the obligations the checks were intended to meet paid in another manner. (*Id.* ¶ 68.)

On or about April 21, 2011, E.A. Technologies and Willner (together, "Debtors") entered into a Stipulation and

---

[1] E.A. Technologies also owes interest on late-paid contributions for the period between February 3, 2010 and February 2, 2011. (Third Am. Compl. ¶¶ 69-75.)

Order of Settlement (the "April 2011 Stipulation") with the Joint Board in which Debtors, jointly and severally, acknowledged and pledged to pay over $300,000 in past due contributions. (*Id.* ¶¶ 76, 138.) Debtors agreed to make an initial $10,000 payment to the Joint Board and weekly payments thereafter, in addition to the regular weekly contributions to the plans as they became due. (*Id.* ¶¶ 78-79, 140-41.) Willner signed the stipulation as principal of E.A. Technologies and in his individual capacity. (*Id.* ¶¶ 80, 142.)

Debtors failed to make any payments as agreed upon in the April 2011 Stipulation and failed to cure their default under the stipulation's terms. (*Id.* ¶¶ 82-83, 144-45.) After the Joint Board contacted Willner regarding the missed payments, Willner informed the Joint Board that he had found a buyer for an apartment he owned through Battery Place Realty, LLC. (*Id.* ¶¶ 85, 146.) Baron & Baron confirmed to the Joint Board in a June 6, 2011 letter that E.A. Technologies would make a payment to the Joint Board at the closing of the sale of the apartment that would include all contributions due up to three weeks prior to the closing date. (*Id.* ¶¶ 86, 148.)

The Joint Board sent an email to Willner on June 7, 2011, which it subsequently forwarded to Baron & Baron on June 8, 2011 along with a request for additional information, asking Willner to send in weekly contributions going forward so as not

to further increase E.A. Technologies' delinquency in the time period before the closing.[2] (*Id.* ¶ 150.)  On June 9, 2011, the Joint Board sent a letter to Debtors, copying Baron & Baron, advising Debtors of their default under the April 2011 Stipulation.  (*Id.* ¶¶ 152-53.)  Debtors failed to cure their default within five days of written notice, as required by the April 2011 Stipulation.  (*Id.* ¶ 154.)  The Joint Board sent a follow-up email to Baron & Baron (1) advising them of the default notice and the Joint Board's plan to notify E.A. Technologies employees that their benefits were in jeopardy and (2) requesting a signed agreement regarding payment of the approximately $890,000 owed by Debtors, as well as a copy of the signed sale contract for the apartment.  (*Id.* ¶¶ 155-57.)  Baron & Baron emailed the Joint Board the same day and responded that that Willner would comply with any agreed-upon terms and that they would supply the apartment sale contract shortly after it was signed.  (*Id.* ¶ 158.)

    The Joint Board emailed Willner and Baron & Baron on June 16, 2013 regarding a deadline for E.A. Technologies employees' continued health benefits and about their failure to provide a signed contract or the closing date for the apartment sale.  (*Id.* ¶¶ 159-60.)  Willner responded the same day, stating

---

[2] At this time, the Joint Board was under the impression that the apartment sale would close in two months, based on prior representations by Baron & Baron and Willner. (*Id.* ¶¶ 150-51.)

that the sale of the apartment would close on July 15, 2011, and no later than August 15, 2011. (*Id.* ¶ 162.) On June 17, 2011, the Joint Board emailed Willner, copying Baron & Baron, to reiterate the need for E.A. Technologies to make up overdue contributions and to provide Willner with a draft repayment agreement. (*Id.* ¶¶ 162-63.) Baron & Baron did not respond to either Willner or the Joint Board's emails. (*Id.* ¶ 164.)

Willner returned a modified version of the draft repayment agreement to the Joint Board, signed by him on behalf of E.A. Technologies and in his individual capacity, on June 21, 2011 (the "June 2011 Agreement").[3] (*Id.* ¶¶ 165-66.) Willner had not informed the Joint Board of the modifications he made to the draft agreement prior to signing it. (*Id.* ¶ 167.) The June 2011 Agreement provided that Debtors would pay their outstanding obligations to the Joint Board upon the sale of the apartment. (*Id.* ¶¶ 85, 168.)

From July to September 2011, the Joint Board sent numerous emails to Baron & Baron to request the apartment sale closing date. (*Id.* ¶¶ 170, 174, 180, 182, 185.) Around the same time, the Joint Board also emailed Willner repeatedly, copying Baron & Baron, to request payment of past due contributions, inform him that recent payments had bounced, and

---

[3] Willner also provided a copy of the agreement to Baron & Baron via email on June 21, 2011. (*Id.* ¶ 169.)

warn him that E.A. Technologies employees would be notified if payments were not timely made.[4] (*Id.* ¶¶ 172-73, 176, 179.) Baron & Baron did not reply to any of those emails.[5] (*Id.* ¶¶ 171, 175, 178, 181, 183, 186.) On September 28, 2011, the Joint Board emailed Willner, copying Baron & Baron, noting that the contract date for the apartment had passed and that if the closing did not take place by October 11, 2011, a new agreement regarding the payment of past due contributions would be required. (*Id.* ¶ 187.) The Joint Board emailed Willner and Baron & Baron again on October 12, 2011 to advise that, because the closing of the apartment sale and payment of past due contributions had not occurred, letters would be sent to E.A. Technologies employees. (*Id.* ¶ 188.) Baron & Baron did not respond to this email. (*Id.* ¶ 189.)

On October 12, 2011, the Joint Board sent letters to the employees of E.A. Technologies advising them that their health insurance and other benefits might be terminated due to their employer's failure to make required plan contributions. (*Id.* ¶ 89.) After the letters were sent, Willner contacted the Joint Board regarding payment of outstanding amounts due, and

_____

[4] Plaintiff also alleges that the Joint Board asked Willner whether the apartment's buyer had paid the $120,000 due by contract if the closing didn't take place by July 15, 2011. (*Id.* ¶ 177.) The Third Amended Complaint does not specify when the Joint Board received the contract, alleging only that the Joint Board requested but did not receive it. (*See id.* ¶ 160.)

[5] Plaintiff also alleges that Baron & Baron failed to respond to voicemail messages left by the Joint Board in 2011. (*Id.* ¶ 191.)

Debtors entered into another stipulation with the Joint Board (the "November 2011 Stipulation"). (*Id.* ¶¶ 193-94.) In the November 2011 Stipulation, Debtors acknowledged over $817,000 owed to the Joint Board, which they would pay back through five weekly payments of $20,000, a lump sum payment of $450,000 due in December 2011, and weekly payments of $7,000 thereafter. (*Id.* ¶¶ 93, 196.) The Debtors also agreed to remit future required contributions as they became due. (*Id.* ¶¶ 94, 197.) As with the April 2011 Stipulation and the June 2011 Agreement, Willner signed in his individual capacity and as principal of E.A. Technologies. (*Id.* ¶¶ 95, 198.) If the Debtors were to default and fail to cure the default within five days of receiving notice of their default, the November 2011 Stipulation provided that the Joint Board would be able to file an action for breach in this court and have judgment entered against Debtors for the full amount currently owed, plus interest and attorney's fees and costs. (*Id.* ¶¶ 96, 199.) Debtors contemporaneously executed an Affidavit for Judgment by Confession to be entered against them if they breached the November 2011 Stipulation. (*Id.* ¶¶ 97, 200.) Again, Debtors failed to make the required payments; the Joint Board informed Willner of the default on June 12, 2012, and Debtors did not cure the default within five days. (*Id.* ¶¶ 98, 202-203.)

Plaintiff alleges that both Willner and Baron & Baron intended the Joint Board to rely upon their representations of the closing date and promises of payment to ensure continuing benefits for E.A. Technologies employees. (*Id.* ¶ 204-206.)

On January 6, 2012, Baron & Baron signed a Termination of Contract on behalf of Battery Place Realty that plaintiff alleges terminated a prior contract of sale dated June 13, 2011. (*Id.* ¶ 207-208.) The deed filed with the New York City Department of Finance indicates that the sale of the apartment closed on January 20, 2012.[6] (*Id.* ¶¶ 100, 215.) The contract did not mention any payments made by the buyer prior to the January 20, 2012 contract date, and the sale amount, $4,752,888, was the same as that in the June 13, 2011 contract. (*Id.* ¶¶ 213-14, 220.)

Baron & Baron did not notify the Joint Board that the earlier contract of sale had been terminated, or that the sale of the apartment had closed, despite their knowledge of Willner's 2011 agreements to pay the Joint Board with proceeds from the sale. (*Id.* ¶¶ 217-18, 221.) At the time of the closing, the amount owed to the Joint Board by Debtors had increased to over $640,000. (*Id.* ¶ 219.) The Joint Board

---

[6] Additionally, a Real Property Transfer Report on file with the New York City Register indicates that the contract date for the sale of the apartment was January 1, 2012, and that the transfer took place on January 20, 2012. (*Id.* ¶ 210-12.)

learned of the sale on June 11, 2012 through a third party, at which time it demanded immediate payment of the amount then owed, which had since increased to over $983,000. (*Id.* ¶¶ 103-104, 241-43.)

Although the Joint Board did not receive any payment from the proceeds of the apartment sale, Baron & Baron received payments of at least $175,000 from the closing for claimed legal fees resulting from work performed for Battery Place Realty LLC and E.A. Technologies.[7] (*Id.* ¶¶ 223-34, 226-30, 244.) The Third Amended Complaint also alleges that E.A. Technologies has no ownership interest in the apartment, and that any legal services that Baron & Baron rendered on behalf of E.A. Technologies were separate and distinct from legal services rendered for Willner and Battery Place Realty LLC in connection with the sale of the apartment. (*Id.* ¶¶ 231-32.) The Third Amended Complaint alleges that Baron & Baron directed these payments to itself, and that Baron & Baron has not produced a written agreement authorizing direct payment to itself from proceeds of the apartment sale. (*Id.* ¶¶ 235-37.)

Plaintiff filed the instant action against E.A. Technologies on November 18, 2011. (ECF No. 1, Complaint.) On

---

[7] Plaintiff also alleges that Baron & Baron received wire payments of $40,000 and $30,000 on September 12, 2011 and October 13, 2011, respectively, from a deposit towards the apartment sale for legal services provided to E.A. Technologies. (*Id.* ¶¶ 184, 190.)

December 20, 2011, the clerk of court entered a default against

E.A. Technologies, and plaintiff moved for default judgment

against the company on January 20, 2012. (ECF No. 4, Clerk's

Entry of Default; ECF No. 6, Mot. for Default Judgment.)  This

court referred plaintiff's motion to Magistrate Judge James

Orenstein for a report and recommendation, which Magistrate

Judge Orenstein issued on July 23, 2012. (ECF No. 22, Report

and Recommendations re: Motion for Default Judgment ("Report and

Recommendation").)  The Report and Recommendation was ultimately

mooted by a consent judgment against defendant E.A.

Technologies, signed by plaintiff and Willner, at which time the

parties also agreed that plaintiff could amend the Complaint.[8]

(ECF Order dated 8/21/12.)  Plaintiff filed an amended complaint

on August 17, 2012, which named as additional defendants several

other companies alleged to be jointly and severally liable for

the past due contributions, and Baron & Baron.  (ECF No. 30,

Amended Complaint.)  The Amended Complaint only included a

single claim for relief against Baron & Baron, seeking an

accounting.  (*Id.*)  With the consent of the parties, except

Willner, plaintiff filed a second amended complaint on June 4,

2013 (ECF No. 94) to add additional parties; the claim against

Baron & Baron, however, was not amended.  On June 10, 2013,

---

[8] At this time, docket numbers 11-cv-5662 (the action filed against E.A.
Technologies) and 12-cv-3071 (the action filed against Willner) were
consolidated.

Baron & Baron requested a pre-motion conference with respect to its proposed motion to dismiss plaintiff's Second Amended Complaint as to Baron & Baron for failure to state a claim upon which relief can be granted. (ECF No. 107, Letter Requesting Pre-Motion Conference.) On July 11, 2013, a pre-motion conference was held and the court ordered plaintiff to file a third amended complaint amending its allegations as to Baron & Baron only. (Minute Entry dated Jul. 11, 2013.) Plaintiff filed the third amended complaint on July 25, 2013, adding eight state law claims against Baron & Baron. (ECF No. 134, Third Amended Complaint.) Baron & Baron renewed its request to move to dismiss the Third Amended Complaint (ECF No. 137) and filed the fully-briefed motion on October 7, 2013 (ECF Nos. 147-51.)

## LEGAL STANDARD

Baron & Baron moves to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint when the allegations contained therein fail "to state a claim upon which relief can be granted." To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to meet this standard, "the

plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require the plaintiff to demonstrate a "probability" of misconduct, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A plaintiff that alleges fraud, as plaintiff does in his fraudulent conveyance claim, must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*,

13

464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and brackets omitted).

## DISCUSSION

The Third Amended Complaint asserts eight claims against Baron & Baron under New York law:[9] (1) unjust enrichment, (2) money had and received, (3) negligence, (4) breach of fiduciary duty/demand for documentary and financial accounting, (5) tortious interference with contract, (6) fraudulent conveyance, (7) constructive trust/promissory estoppel, and (8) breach of contract/quasi-contract. The court will address each claim in turn.

## I. Unjust Enrichment

Plaintiff claims that Baron & Baron was unjustly enriched by the legal fees it received from the apartment sale proceeds. To state a valid cause of action for unjust enrichment, a plaintiff must allege (1) "that the defendant was enriched at the plaintiff's expense" and (2) "that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (internal citations omitted). The alleged enrichment must be "specific" and "direct." *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Additionally, if a

_____

[9] Neither party has disputed that the law of the forum state should apply to plaintiff's common law claims.

14

valid contract governs the relevant subject matter, a claim for unjust enrichment cannot be sustained, even against an entity that is not a party to the governing contract. *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 165-66 (E.D.N.Y. 2012) (collecting state and federal cases).

Plaintiff has not alleged sufficient facts to support an inference that that Baron & Baron was unjustly enriched at plaintiff's expense. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011) (unjust enrichment claim must fail where relationship between parties is not alleged); *Wiener v. Lazard Freres & Co.,* 672 N.Y.S.2d 8, 12–13 (N.Y. App. Div. 1st Dep't 1998) (essential element of unjust enrichment claim is that plaintiff conferred a benefit upon defendant). While Baron & Baron was undoubtedly enriched by the payments for legal fees it received from the proceeds of the Willner apartment sale, plaintiff has not alleged facts to establish that Baron & Baron's receipt of fees from its client was at plaintiff's expense. Plaintiff's allegation that Baron & Baron was aware of Willner's promise to pay the Joint Board is not enough to show that Baron & Baron benefited at the Joint Board's expense without any indication of a relationship between Baron & Baron and plaintiff. As discussed further below, there is no indication from the alleged facts that Baron & Baron had any

obligation to plaintiff as co-defendants Willner and E.A.
Technologies' counsel.

Neither can plaintiff show that equity and good
conscience requires that the Joint Board recover from Baron &
Baron.  As the Third Amended Complaint asserts, Baron & Baron
provided legal services to Willner and his companies, E.A.
Technologies and Battery Place Realty.  (*See* Third Am. Compl. ¶¶
134-37.)  Plaintiff does not allege that Baron & Baron was paid
for any reason other than compensation for legal services
provided.  The non-conclusory allegations in the Third Amended
Complaint, taken as true, do not suggest that principles of
equity and good conscience require Baron & Baron to relinquish
its legal fees to the Joint Board because of Willner's failure
to pay the Joint Board as he had repeatedly promised.  *See In re*
*Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d at 532
(dismissing unjust enrichment claim where complaint alleged no
facts "from which a reasonable trier of fact could infer that
[the defendant] is not equitably entitled to keep any legal fees
it earned for services rendered") (internal citations omitted).

Finally, no unjust enrichment claim can lie because
plaintiff had a contract with Willner concerning payment of the
overdue contributions.[10]  *See Air Atlanta Aero Eng'g Ltd. v. SP*

---

[10] In fact, as an alternate theory of recovery, plaintiff argues that Baron &
Baron tortiously interfered with these contracts between Willner and the
Joint Board.  (*See* Third Am. Compl. ¶¶ 285-298, Opp. at 19-20.)

*Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009) (dismissing quasi-contractual claims against defendant where the failed payment to plaintiff was covered by written contracts between plaintiff and another party). Plaintiff attempts to evade this result by arguing that the Joint Board's claims against Baron & Baron arise from separate written representations by the firm and its failure to comply with those promises. Plaintiff's recharacterization is unsuccessful. The debt plaintiff seeks to collect is owed by Willner and E.A. Technologies and is the subject of numerous agreements between Willner, E.A. Technologies, and the Joint Board, thereby precluding quasi-contractual recovery from a third party.

## II. Money Had and Received

Plaintiff also brings a claim against Baron & Baron for money had and received. "The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) (citing *Miller v. Schloss*, 218 N.Y. 400, 407 (N.Y. 1916)). Like a cause of action for unjust enrichment, a claim for money had and received turns on whether a defendant has benefitted from what

is rightfully the plaintiff's such that equity and good conscience demand restitution. *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 WL 4038826, at *4 (E.D.N.Y. Oct. 14, 2010).

First, plaintiff cannot demonstrate that the proceeds from the apartment sale, from which Baron & Baron was allegedly paid, belonged to the Joint Board. Plaintiff alleges no facts that permit an inference that the Joint Board had an ownership interest in or an immediate superior right of possession to the proceeds of the apartment sale. Accepting the allegations in the Third Amended Complaint as true, plaintiff at best alleges that Baron & Baron was paid with funds that had also been promised to the Joint Board by the firm's clients. This theory is insufficient to sustain a claim for money had and received. *See In re Ames Department Stores*, Adv. No. 01-8153, 2008 WL 7542200, at *9 (S.D.N.Y. June 4, 2008) (rejecting plaintiff's argument that "[Plaintiff] can pursue a money had and received claim against [defendant] on the theory that [defendant] received money from [third party] that was due to [plaintiff]").

Plaintiff's argument that there is an outstanding factual issue because Baron & Baron has not established superior title in the sale proceeds is misguided. (*See* ECF No. 150, Opposition to Defendant Baron & Baron's Motion to Dismiss ("Opp.") at 14-15.) To state a claim for money had or received,

plaintiff must allege that Baron & Baron received money belonging to the Joint Board. Whether Baron & Baron had a superior right in the proceeds to the Joint Board's is irrelevant to the cause of action; rather, without any allegation that the Joint Board had an ownership interest in the proceeds paid to Baron & Baron, plaintiff's claim for money had and received must be dismissed.

Second, as discussed in the context of plaintiff's unjust enrichment claim, there is nothing in the Third Amended Complaint to suggest that principles of equity and good conscience necessitate that the Joint Board recover the funds paid to Baron & Baron. In his opposition brief, plaintiff argues that equity and good conscience require restitution because (1) Baron & Baron failed to notify the Joint Board of the apartment sale in a deliberate attempt to protect Baron & Baron's interests at the expense of its clients' interests and (2) Baron & Baron provided legal services to E.A. Technologies and Willner but was paid from the sale proceeds of an apartment owned by Battery Place Realty. (Opp. at 15.) Neither of these facts support recovery from Baron & Baron by the Joint Board because the former owed no duty to the latter. If Baron & Baron violated any duty owed to its clients, the remedy would be due to the clients, not the Joint Board. Further, it is neither unusual nor unjust that Willner would use the proceeds from the

apartment sale to pay Baron & Baron for legal services rendered
to Willner, E.A. Technologies, and other Willner-owned entities.

Finally, plaintiff's claim for money had and received,
like his unjust enrichment claim, is also foreclosed by the
Joint Board's agreements with Willner. *See Indep. Order of
Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940
(2d Cir. 1998) (affirming dismissal of money had and received
claim where there was a valid contract concerning the dispute at
issue) (internal citation omitted).

## III. Negligence

Plaintiff alleges negligence by Baron & Baron based on
a duty to the Joint Board resulting from Baron & Baron's
representations that it would contact the Joint Board and pay
proceeds from the apartment sale. (Third Am. Compl. ¶ 268.)
Under New York law, the elements of a negligence claim are:
"'(1) the existence of a duty on defendant's part to plaintiff;
(2) a breach of this duty; and (3) that such breach was a
substantial cause of the resulting injury.'" *Gray v. Wackenhut
Servs., Inc.*, 446 F. App'x 352, 353 (2d Cir. 2011) (quoting
*Merino v. New York City Transit Auth.*, 639 N.Y.S.2d 784, 787
(N.Y. App. Div. 1st Dep't 1996)). "Whether a duty exists is a
question of law for the court." *In re Bayou Hedge Funds Inv.
Litig*, 472 F. Supp. 2d at 531. Additionally, an attorney
providing legal services generally may not be held liable for

negligence to a third party with whom the attorney is not in privity. *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 146 (N.Y. App. Div. 1st Dep't 1987).

The Third Amended Complaint does not contain facts indicating that Baron & Baron owed a duty to the Joint Board. *See Calamari v. Grace*, 98 A.D.2d 74, 78 (N.Y. 1983) ("It is a generally accepted tenet of New York law that a duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not intended beneficiaries of the subject undertaking."). In his opposition brief, plaintiff attempts to resuscitate his negligence claim by arguing the application of an exception under New York law allowing a professional to be held liable to a third party with whom he is not in privity "when he issues a report knowing that it is to be used for a particular purpose and a third party relies thereon." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 *amended* 66 N.Y.2d 812 (N.Y. 1985). New York courts have recognized the narrow scope of the exception and limited its application to circumstances where the "'functional equivalent' of privity" exists." *Williams & Sons Erectors, Inc. v. S. Carolina Steel Corp.*, 983 F.2d 1176, 1182 (2d Cir. 1993) (citing *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (N.Y. 1989)).

Plaintiff's reliance on this exception is unsuccessful because plaintiff has not alleged facts supporting the requisite link between Baron & Baron and the Joint Board to find that a duty of care ran from the former to the latter. Plaintiff alleges that Baron & Baron represented to the Joint Board via email and letter that Baron & Baron's client would pay the Joint Board with proceeds from the apartment sale at closing. (Third Am. Compl. ¶¶ 148, 158.) Rather than issuing a report or opinion letter with the intent that a third party would rely on the representations therein, Baron & Baron sent an email to its clients' adversary regarding one of its client's intended course of action. There is no allegation that a "particular purpose" of Baron & Baron's retention was ensuring payment to the Joint Board. *Credit Alliance*, 65 N.Y.2d at 551-54; *see also Gen. Motors Corp. v. Villa Marin Chevrolet, Inc*., No. 98-CV-5206, 2000 WL 271965, at *23-26 (E.D.N.Y. Mar. 7, 2000).

According to the Third Amended Complaint, the Joint Board entered into agreements with defendants E.A. Technologies and Edward Willner, who were both represented by counsel, Baron & Baron. The fact that Baron & Baron communicated with the Joint Board on behalf of its clients does not make the Joint Board the functional equivalent of a client. Thus, Baron & Baron did not owe plaintiff a duty. Nor can plaintiff allege that Baron & Baron caused plaintiff's injuries, which were

22

instead the direct result of the failure of Willner, E.A. Technologies, and others to pay amounts due to the Joint Board pursuant to collective bargaining agreements and stipulations with the Joint Board. (Third Am. Compl. ¶¶ 37-87, 91-98.) Consequently, the negligence claim must be dismissed.

## IV. Breach of Fiduciary Duty/Demand for Documentary and Financial Accounting

Plaintiff's ninth cause of action is for breach of fiduciary duty and a "demand for documentary and financial accounting," which the court construes as plaintiff's desired remedy for its breach claim. To state a cause of action for breach of fiduciary duty, "plaintiff must allege three elements: (1) the existence of fiduciary relationship; (2) knowing breach of a duty that relationship imposes; and (3) damages suffered." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2005). A fiduciary relationship may be found "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1st Dep't 1987)). Generally, New York courts "focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Thermal Imaging, Inc. v.*

*Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001)
(internal citations omitted). "Mere reposal of one's trust or
confidence in a party, however, does not automatically create a
fiduciary relationship; the trust or confidence must be accepted
as well." *Id.*

Here, the alleged relationship between the Joint Board
and Baron & Baron is too attenuated to give rise to any
fiduciary duty. Baron & Baron, as counsel to Willner and E.A.
Technologies, was not under a duty to give advice for the
benefit of the Joint Board. Plaintiff does not allege any facts
from which the court can infer that either the Joint Board or
Baron & Baron intended to enter into a fiduciary relationship
with the other.

Instead, plaintiff makes the conclusory allegation
that "Baron & Baron's actions as the de facto closing agent
makes it a fiduciary with respect to its role in the closing of
the sale of the Apartment." (Third Am. Compl. ¶ 278; *see also*
Opp. at 19.) Plaintiff's conclusory allegation is insufficient
to state a claim. Baron & Baron would not have owed the Joint
Board any duty with regard to disbursement of proceeds at
closing because the Joint Board was not a party to the apartment
sale and Baron & Baron did not represent the Joint Board.
Furthermore, plaintiff does not allege facts supporting an
inference that Baron & Baron failed to disburse the proceeds

from the apartment sale as intended by the parties to the transaction. Therefore, because Baron & Baron was not a fiduciary of plaintiff's, the claim for breach of fiduciary duty is dismissed.

### V. Tortious Interference with Contract

Plaintiff also alleges tortious interference by Baron & Baron with the Joint Board's agreements with Willner and E.A. Technologies. To make out a *prima facie* case for tortious interference with contract in New York, a plaintiff must establish "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401- 402 (2d Cir. 2006) (internal citations and quotation marks omitted). Attorneys are not liable to third parties for tortious interference with contract based on actions taken on behalf of, and advice given to, their clients, absent a showing of fraud or bad faith. *Beatie v. DeLong*, 561 N.Y.S.2d 448 (N.Y. App. Div. 1st Dep't 1990); *Burger v. Brookhaven Medical Arts Bldg.*, 516 N.Y.S.2d 705, 708 (N.Y. App. Div. 2d Dep't 1987).

To the extent that the Third Amended Complaint alleges that Baron & Baron intentionally, and without justification,

induced Willner's breach of his contracts with the Joint Board, the allegations are conclusory and fail to state a claim. (*See* Third Am. Compl. ¶¶ 294, 297 ("Through its intentional actions insuring that significant funds from the pending, and eventual, closing of the Apartment were dissipated to itself and others, Baron & Baron aided in assuring the Company and Willner's breach of their obligations to the Joint Board....").) Plaintiff argues in his opposition that Baron & Baron acted in its own interest by ensuring its fees were paid with the sale proceeds, but fails to explain how this demonstrates interference without justification or intent to cause Willner's breach. A party does not induce or procure breach of contract when he "merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *High Falls Brewing Co., LLC v. Boston Beer Corp.*, 852 F. Supp. 2d 306, 316 (W.D.N.Y. 2012) (quoting Restatement 2d of Torts § 766, Comment n (1979)).

Plaintiff has not shown fraud, malice, or bad faith by Baron & Baron that could sustain a claim for tortious interference against the firm. Plaintiff does not allege facts supporting an inference that Baron & Baron acted outside the scope of its authority or against the wishes of its client. In his opposition, plaintiff argues that Baron & Baron acted fraudulently or in bad faith because it (1) did not inform the

Joint Board of the closing date, (2) caused the original
apartment sale contract to be terminated only to later be
reissued, (3) received payment for its legal services from the
funds at closing instead of ensuring the repayment Willner's
debt to the Joint Board, and (4) was paid with checks or wire
transfers from the buyer rather than from Willner or his
companies.  Even assuming each of these factual allegations to
be true, they do not establish that Baron & Baron did anything
other than act in its own interest, when it was under no
obligation to act in the best interest of the Joint Board.
Defendant's motion to dismiss is therefore granted with respect
to plaintiff's tortious interference claim.

## VI.  Fraudulent Conveyance

Plaintiff contends that Baron & Baron knowingly
participated in a fraudulent conveyance, as defined by Sections
273 and 276 of the New York Debtor and Creditor Law ("DCL"), and
that the transaction should be avoided and Baron & Baron
disgorged of their profit.  (Third Am. Compl. ¶ 305.)  For the
reasons discussed below, plaintiff fails to state a claim for
actual or constructive fraudulent conveyance.

### A.  Constructive Fraudulent Conveyance

Under § 273 of the DCL, a conveyance by a debtor is
deemed constructively fraudulent if (1) it is made without fair
consideration and (2) the transferor is insolvent or will be

rendered insolvent by the transfer in question. *See Gala*

*Enterprises, Inc. v. Hewlett Packard Co.*, 989 F. Supp. 525, 528-

29 (S.D.N.Y. 1998). Fair consideration will be found when "(1)

the recipient of the debtor's property [has] either (a)

conve[ed] property in exchange or (b) discharge[d] an antecedent

debt in exchange; and (2) such exchange [is] a fair equivalent

of the property received; and (3) such exchange [is] in good

faith." *In re Sharp International Corp.*, 403 F.3d 43, 56 (2d

Cir. 2005) (internal citations and quotation marks omitted);

*accord Sardis v. Frankel*, 978 N.Y.S.2d 135, 141 (N.Y. App. Div.

1st Dep't 2014). A law firm's commitment to represent a client

constitutes "fair consideration" under § 273. *See Gala*

*Enterprises*, 989 F. Supp. at 529.

Assuming *arguendo* that Willner and E.A. Technologies

were insolvent or rendered insolvent by their payment to Baron &

Baron,[11] plaintiff does not satisfy his burden in alleging a lack

of fair consideration for the payment to Baron & Baron.

Plaintiff has not alleged that the payment received by Baron &

Baron was not a fair equivalent for the legal services rendered

---

[11] As an initial matter, plaintiff contends that Willner was insolvent or was rendered insolvent as a result of the payment to Baron & Baron after the sale of the apartment (Third Am. Compl. ¶ 301.) but does not allege facts to support this conclusion other than Willner and E.A. Technologies' failure to make payments to the Joint Board. Furthermore, the apartment sale price of $4,752,888 (*see id.* ¶¶ 100-101) and alleged value of the payment received by Baron & Baron ($175,000), do not support the inference that Willner was rendered insolvent by the payment of Baron & Baron's legal fees.

28

or that the transaction was made in bad faith.  *See In re Sharp International Corp.*, 403 F.3d at 54-55 ("a mere preference between creditors does not constitute bad faith").  Rather, plaintiff argues that fair consideration was not given because Baron & Baron was paid for services rendered to different entities: Battery Place Realty, Willner, and E.A. Technologies.  (Opp. at 21-22.)  Plaintiff cites *Bennett v. Rodman & English*, 2 F. Supp. 355 (E.D.N.Y. 1932), in support of the proposition that there is no fair consideration where the debt paid is not an obligation of the transferor.  Because E.A. Technologies and Willner never had any ownership interest in the apartment sold, according to plaintiff, any legal services performed by Baron & Baron on behalf of those clients were separate and distinct from legal services performed in connection with the sale of the apartment.  (Third Am. Compl. ¶¶ 232-34; Opp. at 21-22.)  Therefore, plaintiff contends, Baron & Baron did not provide fair consideration for the share of proceeds it received from the apartment sale.

Plaintiff's theory fails because it would deem any transfer of the apartment sale proceeds to creditors of Willner or E.A. Technologies (including, *e.g.*, the Joint Board) to be presumptively fraudulent.  Furthermore, the Third Amended Complaint alleges that Battery Place Realty is solely owned by Willner (Third Am. Compl. ¶ 137) and that transfer was made by

"[E.A. Technologies], Willner and/or Battery Place Realty LLC"
(Third Am. Compl. ¶¶ 300-305).  Similarly, plaintiff makes much
of the fact that Baron & Baron may have received payment for
legal services rendered in matters other than the sale of the
apartment.  Plaintiff cites no authority, however, requiring
that proceeds from the sale of real property be used only to pay
debts arising out of, or related to, the same transaction.

Taken to be true, plaintiff's allegations suggest that
Willner's payment to Baron & Baron was a preferential repayment
of Willner's debt to Baron & Baron for legal fees over his debt
to the Joint Board.  A preferential repayment of preexisting
debts to one creditor over another does not constitute a
fraudulent conveyance, whether or not it prejudices other
creditors, because "the basic object of fraudulent conveyance
law is to see that the debtor uses his limited assets to satisfy
*some* of his creditors; it normally does not try to choose among
them."  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir.
1995) (quoting *Boston Trading Group, Inc. v. Burnazoa*, 835 F.2d
1504, 1509 (1st Cir. 1987)) (emphasis in original).  Thus, even
assuming that Willner was rendered insolvent as a result of his
payment to Baron & Baron, Willner's preference to pay Baron &
Baron while not paying plaintiff does not constitute a
fraudulent conveyance because Willner was free to choose among
his creditors.

**B. Actual Fraudulent Conveyance**

For a conveyance to be fraudulent under DCL § 276, it must be made with actual intent on the part of the transferor to "hinder, delay, or defraud either present or future creditors." N.Y. Debt. & Cred. Law § 276. Where there is actual intent to defraud, the adequacy of consideration is irrelevant. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994). Under Federal Rule of Civil Procedure 9(b), actual intent to defraud must be alleged with specificity. *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).

Because proving fraudulent intent can be difficult, plaintiffs may allege certain objective facts or common "badges of fraud" that will give rise to an inference of intent to defraud. *In re Sharp International Corp.*, 403 F.3d at 56 (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (N.Y. App. Div. 1st Dep't 1999)). Among these indicia are inadequacy of consideration, a close relationship between transferor and transferee, insolvency of the transferor resulting from the conveyance, secrecy, a transfer not in the ordinary course of business, and the transferor's retention of control of the property after the conveyance. *See id.; In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). The absence of such badges of fraud (*i.e.*, "evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the

transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control") can indicate that there was no intent to defraud. *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 383 (S.D.N.Y. 2013) (internal citations omitted).

Plaintiff fails to allege the transferor's intent to defraud with necessary particularity required by Rule 9(b). The Third Amended Complaint states, "[u]pon information and belief, a principal purpose of the contract termination of sale was to delay payment to the Joint Board and other creditors of Willner and the Company." (Third Am. Compl. ¶ 303.) Other than this conclusory allegation, the Third Amended Complaint is silent as to any inference of fraudulent intent on the part of E.A. Technologies, Willner, or Battery Place Realty. Plaintiff argues in his opposition brief that the "obvious" inference from the facts in the Third Amended Complaint is that Baron & Baron, E.A. Technologies, and Willner intended to hinder and delay payment to the Joint Board by paying Baron & Baron with the apartment sale proceeds, but provides no facts from which the court can make that inference.

Neither has plaintiff alleged sufficient facts to establish circumstantial indicia of fraud. Instead, the facts as alleged tend to establish the absence of any badges of fraud and indicate that the conveyance was a mere preference between

creditors.  Plaintiff alleges only that Baron & Baron received payment for legal services rendered while the Joint Board was not paid as promised by Willner, rather than any unusual relationship between Willner and his counsel.  Plaintiff does not allege that Willner retained control over the funds allegedly conveyed to Baron & Baron.  To the extent that plaintiff attempts to argue that Baron & Baron intended to defraud the Joint Board by failing to inform the Joint Board of the apartment closing date (something, as discussed above, Baron & Baron was under no duty to do), the fraudulent conveyance claim still fails because plaintiff has failed to allege intent on the part of the transferor.

### VII. Constructive Trust/Promissory Estoppel

Plaintiff's twelfth cause of action seeks to recover from Baron & Baron under either a constructive trust or promissory estoppel theory.  Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *See Bankers Sec. Life Ins. Soc'y v. Shakerdge,* 49 N.Y.2d 939, 940 (1980).  Although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be "rigidly limited." *In re Koreag,*

*Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992).
The focus of the inquiry at the motion to dismiss phase is
whether the defendant was unjustly enriched. *State Farm Mut.*
*Auto. Ins. Co. v. Cohan*, No. 12-CV-1956, 2013 WL 4500730, at *5
(E.D.N.Y. Aug. 20, 2013) (citing *In re First Central Fin. Corp.*,
377 F.3d 209, 212 (2d Cir. 2004)).

        The facts alleged in the Third Amended Complaint do
not state a claim for a constructive trust.  As discussed
herein, it cannot be inferred that Baron & Baron was a fiduciary
of the Joint Board's or that Baron & Baron was unjustly enriched
by the fee payments it received.  Neither has plaintiff alleged
that a transfer was made in reliance on any alleged promise by
Baron & Baron.

        While plaintiff correctly notes that the constructive
trust doctrine is flexible, based on the facts alleged, a
constructive trust claim has not been stated.  In his
opposition, plaintiff argues that "[b]ut for Baron's actions,
moneys to pay the Joint Board as previously and repeatedly
pledged by Baron, the Company, Willner and/or Battery Place
would have been set aside and transmitted to the Joint Board
pursuant to [E.A. Technologies' ERISA obligations and 2011
agreements with the Joint Board.]"  (Opp. at 24.)  This
assertion is totally conclusory, speculative and unsupported by
facts to state a plausible constructive trust claim.  Although

plaintiff's Third Amended Complaint details the tortured history of the Joint Board's attempts to recover past due contributions from E.A. Technologies and Mr. Willner, plaintiff has pleaded no facts regarding three of the four elements of a constructive trust claim. Absent are factual allegations that Baron & Baron shared a confidential or fiduciary relationship with plaintiff, that plaintiff made a transfer in reliance on a promise by Baron & Baron, or that the firm caused payment not to be made to the Joint Board and was unjustly enriched. Furthermore, the transfer made was by co-defendant Willner, not plaintiff – notwithstanding plaintiff's allegation that the June 2011 Agreement created an equitable lien on the apartment sale proceeds. To state a constructive trust claim over the payments received by Baron & Baron would require the plaintiff to allege facts from which a fact finder could determine that the Joint Board was a more worthy creditor of Willner's than Baron & Baron was. For the foregoing reasons, the court finds that plaintiff has failed to state a constructive trust claim and it is dismissed.

Turning next to plaintiff's promissory estoppel claim, under New York law a plaintiff must allege (1) "a clear and unambiguous promise," (2) "reasonable and foreseeable reliance by the party to whom the promise is made," and (3) "an injury sustained by the party asserting the estoppel by reason of his

reliance." *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984) (internal citations omitted). "The circumstances [must be] such as to render it *unconscionable* to deny the promise upon which plaintiff has relied." *Elvin Associates v. Franklin*, 735 F. Supp. 1177, 1182 (S.D.N.Y. 1990) (internal citations and quotation marks omitted) (emphasis in original).

Plaintiff has failed to identify a clear and unambiguous promise that Baron & Baron made to the Joint Board. The Third Amended Complaint alleges that Baron & Baron promised that it would notify the Joint Board when the apartment sale closed and that Mr. Willner would make good on his promise to pay the Joint Board. (Third Am. Compl. 148, 158.) Any statements that Baron & Baron was alleged to have made regarding a promise to pay involved promised action by Willner, not the firm.

Even drawing every possible positive inference from the facts alleged by plaintiff, this case does not allege circumstances in which it would be unconscionable to deny the promise upon which plaintiff allegedly has relied. As correctly noted by Baron & Baron, if the Joint Board was not paid the contributions to which Willner and his company were contractually bound and had repeatedly promised to make, any fault lies with those defendants, not their counsel who communicated with the Joint Board on behalf of its clients.

As discussed above, plaintiff has not alleged facts that state a claim for the relief sought by the Joint Board. Accordingly, plaintiff's claims for a constructive trust and promissory estoppel are dismissed.

## VIII.    Breach of Contract/Quasi-Contract

Plaintiff's final cause of action against Baron & Baron is for breach of contract.[12]  To state a valid cause of action for breach of contract under New York law, the complaint must allege 1) a contract between the plaintiff and defendant, 2) performance by the plaintiff, 3) defendant's breach of the contract, and 4) damages.  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Plaintiff's breach of contract claim must be dismissed because the Third Amended Complaint fails plausibly to allege that Baron & Baron entered into a contract with the Joint Board. Plaintiff argues that because Baron & Baron emailed the Joint Board regarding timing and notice of the apartment sale, Baron & Baron entered into an agreement with the Joint Board.  However, there is no indication that (1) Baron & Baron intended to bind

---

[12] Plaintiff does not address the allegations that Baron & Baron aided and abetted Willner's breach of contract (*see* Comp. ¶¶ 316-17) in his opposition memorandum. As defendants correctly note, New York law does not recognize a cause of action for aiding and abetting breach of contract. *Fisch v. New Heights Acad. Charter Sch.*, No. 12 CIV. 2033, 2012 WL 4049959, at *7 (S.D.N.Y. Sept. 13, 2012) (citing *Purvi Enterprises, LLC v. City of New York*, 62 A.D.3d 508, 509 (N.Y. App. Div. 2009)).

itself to the terms of a purported agreement with the Joint
Board, (2) Baron & Baron promised it (rather than Willner) would
take any action, or (3) that the Joint Board provided any
consideration to Baron & Baron for any such promise.

In further support of his argument, plaintiff argues
that the existence of a contract was pled sufficiently because
Baron & Baron argues that other causes of action are barred by
the existence of written agreements. (Opp. at 27.) This
assertion is flawed. The only agreements that the Third Amended
Complaint alleges are between E.A. Technologies, Mr. Willner,
and the Joint Board, and include the collective bargaining
agreements and agreements regarding the payment of E.A.
Technologies' past due contributions to the Joint Board.

Furthermore, Baron & Baron cannot be held liable for
breach of an agreement to which it is not a party. To the
extent the Third Amended Complaint attempts to allege that Baron
& Baron bound itself to the terms of collective bargaining
agreements and the April, June and November 2011 agreements by
emailing the Joint Board regarding Mr. Willner's intention to
perform, the breach of contract claim must fail because Baron &
Baron was acting as agent of a disclosed principal. Under New
York law, "an agent for a disclosed principal will not be
personally bound [by a contract signed in the agent's official
capacity] unless there is clear and explicit evidence of the

agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Interactive Motorsports & Entm't Corp. v. Dolphin Direct Equity Partners, LP*, 419 F. App'x 60, 62 (2d Cir. 2011) (quoting *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67 (N.Y. 1961)) (internal quotation marks omitted).

In this case, as Baron & Baron asserts and plaintiff fails to allege to the contrary, Baron & Baron is not a party to and, therefore, cannot be liable for any alleged breach of any agreement between the Joint Board and E.A. Technologies and Mr. Willner. The Third Amended Complaint does not allege that Baron & Baron signed the collective bargaining agreement or the April, June and November 2011 agreements, or evinced any intent to be bound by them. In fact, the Third Amended Complaint alleges, at most, that Baron & Baron was aware of the April, June, and November 2011 agreements, by virtue of being copied on the relevant emails attaching the agreements and once stating that Mr. Willner would abide by the terms of the agreement. Thus, Baron & Baron is entitled to dismissal of plaintiff's breach of contract claim because it fails to state a claim against Baron & Baron.

## IX. Leave to Replead

The court dismisses plaintiff's claims against Baron & Baron without leave to replead. Pursuant to Federal Rule of

Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss a plaintiff's claims without leave to amend when the proposed amendments would be futile. *See Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis,* 381 U.S. 178, 182 (1962)). An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)). Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies. *Ruotolo,* 514 F.3d at 184 (citing *Foman,* 381 U.S. at 182); *see also DeJesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

After two opportunities to amend his complaint to add Baron & Baron as a defendant and add claims against the firm, plaintiff has crafted a complaint rife with conclusory

allegations and unsustainable claims that border on the frivolous.  Because further amendments to the Third Amended Complaint would not cure the deficiencies discussed in this Memorandum and Order, any amendment would be futile. Plaintiff's Third Amended Complaint is, therefore, dismissed with prejudice.  *See, e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 Fed. App'x 43, 45–46 (2d Cir. 2008) (holding that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile." (internal citation omitted)).

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiff's claims against Baron & Baron are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6).  The Clerk of the Court is respectfully requested to dismiss defendant Baron & Baron from this case.

**SO ORDERED.**


Dated: September 3, 2014
      Brooklyn, New York


                _____      /s/_____
                KIYO A. MATSUMOTO
                United States District Judge
                Eastern District of New York